No. 3415.—Frank V. Deslonde v. Charles Lozano.

An action to contest the right to a parish office must be filed in the court having jurisdiction within ten days after the date of the election, otherwise the right is forfeited.

APPEAL from the Fifth Judicial District Court, parish of Iberville. *Posey*, J. *Barrow & Pope*, for plaintiff and appellant. *B. L. Lynch*, for defendant and appellee.

Ludeling, C. J. The plaintiff, who was a candidate for the office of sheriff at the general election held in November, 1870, contests the election of Charles Lozano, who was declared elected to said office by the returning officers of the State of Louisiana.

The election was held on the seventh of November, the proclamation

·of the returning officers was published on the fourth of December, and the petition of the plaintiff was filed on the thirteenth of December, in the year 1870.

The defendant filed a peremptory exception to this suit, averring, among other grounds of defense, that the petition was not filed within ten days after the election, and therefore that the right to contest the election is barred under the laws of this State. This defense was sustained by the district judge, and the plaintiff has appealed.

We think the judgment of the district court correct. The act of 1855, re-enacted in 1870, declares that "any candidate for either of the offices of the clerk of the district court, parish recorder, sheriff, ·coroner, justice of the peace, and any other parish officer that may be elected by the people, intending to contest an election, shall, within ten days after the election, file in the district court for the parish in which the election may have been held, a petition setting forth the facts on which he intends to contest the election."

It is clear that if this law was in force in November, 1870, the plaintiff's right of action was prescribed, unless the interpretation put by the plaintiff upon the clause, "within ten days after the election," be ·correct. He contends that the election was not over until the result of the election had been published by the returning officers, in this case the fourth of December, 1870; and that the ten days began to run only from that time, because until the proclamation of the returning officers had been made, the plaintiff could not know who was returned as ·elected. The plaintiff refers to the case of Davis v. Maxwell, 22 An. 66, to support his interpretation. The only question decided in that ·case was that the provisions of the act of the eighteenth of October, 1868, were prospective in their operations, and therefore could not ·regulate the proceedings to contest an election held in the month of April, 1870. The election was completed on the seventh day of November, 1870, in conformity to article 17 of the Constitution. Ascertaining the result and making proclamation thereof by the returning ·officers of the State formed no part of the election.

The act of the sixteenth of March, 1870, entitled "An Act to regulate the conduct and maintain the freedom and purity of elections, to prescribe the mode of making, and designate the officers who shall make the returns thereof," etc., does not repeal, by implication, section 1419 of Revised Statutes of 1870. We are unable to discover anything ·contradictory in the said laws. Neither have we been able to perceive why it was necessary that the publication of the result of the election by the returning officers of the State should be made before the plaintiff could file his suit to contest the election.

Section 53 of the act of sixteenth March, 1870, provides that "the ·supervisor of registration shall, *immediately* upon the receipt of each

ballot box, note its condition and the state of the seals and fast-enings thereof; and shall then in the presence of the commissioners of election and three citizens, freeholders of the parish for such poll or voting place, open the ballot box and count the ballots therein, and make a list of all the persons voted for, the number of votes for each person, the number of ballots in the box, and the number of ballots rejected and the reason therefor. The statement shall be made in triplicate, and each copy shall be signed and sworn to by the commissioner of the poll and by the supervisor of registration. As soon as the supervisor of registration shall have made the statement above provided for for each poll in his precinct or parish, and it shall have been sworn to and subscribed as above directed, the supervisor of registration shall inclose in an envelop of strong paper or cloth, securely sealed, one copy of such statement from each poll, and one copy of the list of persons voting at each poll, and one copy of any statements as to violence or disturbance, bribery or corruption, or other offenses specified in section nine of this act, if any there be, together with all memoranda and tally list used in making the count and statement of the votes, and shall send such package by mail, properly and plainly addressed to the Governor of the State. The supervisor of registration shall send a copy of said statement to the Governor of said State by the next most speedy mode of conveyance, and shall retain the third copy in his own possession."

Thus it is clear that if the supervisor of registration did his duty (and we are bound to assume that he did in the absence of proof to the contrary), the plaintiff had the means of knowing that he would not be returned as elected, and every act he complains of must have been as well known to him the day after the election as after the proclamation of the result made by the returning officers.

It is therefore ordered and adjudged that the judgment of the district court be affirmed, with costs of appeal.